770

## OKLAHOMA–ARKANSAS TELEPHONE CO. v. SOUTHWESTERN BELL TELE- PHONE CO.

District Court, W. D. Arkansas. Ft. Smith Division. June 1, 1929.

No. 3416.

Robinson, House & Moses and Harry E. Meek, all of Little Rock, Ark., and Jas. B. McDonough, of Ft. Smith, Ark., for plaintiff.

Downie & Schoggen, of Little Rock, Ark., and Claude Nowlin, of Oklahoma City, Okl., for defendant.

MARTINEAU, District Judge. The plaintiff is the Oklahoma-Arkansas Telephone Company, hereinafter referred to as the Poteau Company. The defendant is the Southwestern Bell Telephone Company, hereinafter referred to as the Bell Company. The Poteau Company owns and operates local telephone exchanges at Heavener, Howe, Wister, and Poteau, in Oklahoma, with toll lines connecting these exchanges. It also has a long distance or toll line from Poteau, Okl., to Ft. Smith, Ark.,

The Bell Company owns and operates the local telephone exchange at Ft. Smith, together with many other exchanges in Oklahoma, Arkansas, Texas, and Missouri. These exchanges are all connected by long-distance lines owned by the defendant, and by connections with other long-distance lines telephonic communication is afforded to practically all parts of the United States and some foreign countries. One of the defendant's toll lines runs from Ft. Smith to Poteau.

It will thus be seen that there are two long-distance lines from Ft. Smith to Poteau, one belonging to the plaintiff, and the other to the defendant.

Prior to January 22, 1928, the Poteau Company's long-distance line was connected with the Bell Company's local exchange at Ft. Smith, and the Bell Company's long-distance line from Ft. Smith was connected with the Poteau Company's exchange at Poteau, under the terms of a working agreement, by which calls originating in plaintiff's system for Ft. Smith and points east were to be routed over plaintiff's line to Ft. Smith, and calls originating in Ft. Smith and points east for points in plaintiff's system were to be routed over defendant's line to Poteau. This agreement between plaintiff and defendant was entered into November 30, 1923, and superseded a traffic agreement between the two companies or their predecessors which had existed for many years. This agreement fixed the compensation that each company was to receive for services performed in connection witth the transmission of calls, and also provided that it should remain in effect for one year "and thereafter until the expiration of thirty days after written notice of determination to terminate same is given by either party to the other."

Instead of figuring literally the amount of compensation due each party under the terms of the contract, the Bell Company adopted what is known as a composite, which is a method of computing a division of the revenues between the companies based, not

upon the actual number of calls over a certain period, but upon an average for a given period, determined from a study of previous business for a like period.

The Poteau Company says that it became dissatisfied with the composite method of settlement, because it was not authorized by the terms of the contract, and refused to pay the amounts demanded by defendant. As a matter of fact, however, it felt that the terms of its contract did not provide a fair compensation for its services rendered, and, as a consequence, some time in 1927 commenced withholding 25 per cent. as commissions, instead of the commissions fixed by its contract. The excess amount thus withheld by the plaintiff amounted to between four and five thousand dollars in December, 1927. The Bell Company attempted to adjust these differences amicably with the plaintiff, but was unsuccessful. In December, 1927, it gave notice that it would terminate the contract of 1923 with the plaintiff in 30 days, and on January 22, 1928, it terminated its physical connection with the plaintiff's system, both at Poteau and Ft. Smith. It then established its long-distance toll station at Poteau, and all in and out calls from Poteau to points in the Bell system had to be handled at this toll station. This required the inhabitants of Poteau to go to this station to transmit or receive long-distance messages. This condition continued for a few days, when the Poteau Company voluntarily permitted long-distance messages to be delivered and received over its local exchange. At the present time, a physical connection of the two telephone systems at Poteau exists under the rules, regulations, and requirements of the Oklahoma Corporation Commission, fixing the terms of said connection and the compensation to be received by each party. Under this arrangement, the facilities for long-distance telephone conversations between Poteau Company points and Ft. Smith, Ark., and all other Bell Company points are the same as existed prior to January 22, 1928, except that all calls both in and out, between Poteau and Ft. Smith, and other points beyond in the Bell system, must pass over the Bell Company's lines from Poteau to Ft. Smith. This, in effect, prevented the use of the Poteau Company's long distance line between these two points.

All telephone calls originating in Arkansas to points on the Poteau system are handled now exactly as they were prior to January 22, 1928, but persons calling from points in the Poteau system to Ft. Smith and to points beyond east must now use the Bell Company's line to that point, where, prior to the termination of the 1923 contract, they used the Poteau Company's lines.

All toll circuits of the Bell Company between Ft. Smith and Poteau are copper, while those of the Poteau Company are iron. The Bell Company's facilities are sufficient to handle all calls between the two points.

The revenue coming to the Poteau Company under the 1923 contract ranged from $200 to $500 per month in long-distance business.

From the record it is disclosed that the Bell Company has physical connection with two telephone companies operating in small towns near Ft. Smith. These connections are maintained under contracts similar in terms to the 1923 contract with plaintiff, having a provision for their termination upon 30 days' notice.

The above is a statement of the facts out of which the present controversy arises.

The Poteau Company by this suit seeks by injunction a reconnection of its long-distance lines with the Bell Company's exchange at Ft. Smith, a restoration of the physical connections between the two companies as they existed under the terms of the contract of 1923.

The court is indebted to the attorneys on both sides for very carefully prepared briefs covering the many points of law raised in the argument and presentation of this case. Only such of these, however, will be discussed as are relevant to the issues to be decided.

In the beginning, it is important to determine just how the granting of the relief prayed for would affect, first, the public as telephone users, and, next, the rights of the two litigants.

The record shows that the public are not materially inconvenienced by the failure to maintain a physical connection of the two telephone systems at Ft. Smith. This is certainly true, if the order of the Oklahoma Corporation Commission is carried into effect. Under existing conditions all calls are transmitted over the Bell Company's line, with equal, if not better, transmission facilities than the Poteau Company's line affords. The delay, if any, occasioned by the mode of handling messages at Poteau would be entirely removed by plaintiff's complying with the terms and conditions of the order of the Oklahoma Corporation Commission, which this court regards as just and equitable. This being true, it is difficult to see how the public is in any way interested in this controversy. This then removes from

the case all questions of law with reference to the regulation and control of public utilities in their relation to the public, the controlling factor in almost all of the cases cited by both plaintiff and defendant. When the public interest is removed from the case, entirely different principles of law determine the conclusion that should be reached. Public necessity and convenience require public utilities to do many things which private individuals or companies cannot require.

In my opinion, this controversy resolves itself into one between the two telephone companies competing for the long-distance business passing through both Poteau and Ft. Smith, at least that part of it which prior to the termination of the contract of 1923 was handled by plaintiff. In such a case, the principles of law governing the making of contracts between private individuals are applicable. One telephone company cannot, where the public interest is not affected, compel a connection with its competitor solely upon the ground that a failure to obtain such a connection will cause it loss. This is the plaintiff's contention. If that principle of law is sound, any small company owning a local exchange may build long distance lines connecting its exchange with the exchanges of a larger company, like the defendant, owning exchanges in many places and operating long-distance lines covering, with its other connections, all important places in the country, and compel a connection with these exchanges, although the larger company has ample long-distance facilities for handling the business between the connected points. This would certainly depreciate, and might destroy, the value of the larger company's properties. The principle of law which would logically bring about such a result is unsound, even when applied to public utilities, unless such a physical connection, when dealing with telephone companies, is clearly demanded by statute or constitutional provisions. Even then, where the public interest is not affected, it is doubtful if the connection may be required where private property is taken or used without just compensation being made therefor. The result of granting the relief prayed for would be to establish two competing toll lines between Poteau and Ft. Smith, and in that way take from two to five hundred dollars per month from the defendant and give it to the plaintiff.

The fact that the failure to grant the relief asked destroys to a large extent the value of the long-distance line of the plaintiff does not entitle it to compel a connection with the defendant. This hazard it should have considered when it constructed the line. When the public interest is not affected, its right to use the defendant company's property is one entirely of contract.

Besides, the public ought not to be required to maintain two long-distance lines between Ft. Smith and Poteau, when one line affords all the telephone facilities needed. If the tolls now charged are too high, ample legislative authority exists for regulating them. The Legislature, and not the courts, makes the laws.

The contention that the defendant has surrendered the independent use of its property by contracting with the plaintiff to use it as a part of a public utility is sound only when the facts justify the holding that the failure to continue to so use it will inconvenience the public. The reason for the rule, if it exists at all, is that the public would be inconvenienced by the failure to continue the contracted use of the property, and, when the reason fails, the rule no longer applies. Contracts between two telephone companies for the joint use of their telephone facilities are governed by the same rules that govern contracts between private individuals, unless the convenience of the public is interfered with by the failure to continue to use their property for the purposes to which it was devoted. Public convenience, and not the interests of the contracting parties determines the right to terminate such a contract.

Plaintiff earnestly contends that the defendant, having made contracts for long-distance connections with other companies, must extend a like service to it. An examination of the contracts which the Bell Company has made with two local telephone companies operating exchanges in points near Ft. Smith, with long-distance lines into Ft. Smith, having a physical connection with the Bell Company's exchange, shows that the terms are not materially different from the contract of 1923 between the plaintiff and defendant. It is certain that these connections are by contract. The service asked for in this suit is entirely different from the service rendered the other two companies. This suit is not to prevent the breach of an existing contract, but to compel a connection without a contract, and without an order of a regulatory body requiring a connection. If it were the law that a defendant having granted a connection to other companies must upon the same terms extend a like service to the plaintiff, the facts show that the defendant originally had a similar contract with the plaintiff, the termination of which was brought

about by the failure of the plaintiff to comply with its terms.

The sole purpose of this suit is to require the defendant to permit the use of its telephone facilities by a competitor. The convenience of the public is in no way affected. Under these conditions, it is fundamental that the relief cannot be granted.

The prayer of the complaint will be denied.